**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMEL BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-07358 |
| | ) | |
| ARYZTA, LLC, | ) | Honorable Thomas M. Durkin |
| | ) | |
| Defendant. | ) | |

**JOINT STATEMENT PURSUANT TO LOCAL RULE 54.3(e)**

Pursuant to Local Rule 54.3(e), the parties, Plaintiff, Jamel Barnes, through his attorneys, Edelson PC, and Defendant, ARYZTA LLC, through its attorneys, O'Hagan Meyer, LLC, submit the following Joint Statement with respect to the motion for attorneys' fees and expenses filed by Plaintiff, Jamel Barnes, in connection with this Court's Memorandum Order and Opinion of December 20, 2017, granting Plaintiff's motion to remand and awarding costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c), and subsequent Order of February 21, 2018 directing the parties to determine appropriate fees through the Local Rule 54.3 procedures or otherwise.

1. Plaintiff Jamel Barnes claims attorney's fees of $48,420.20. Barnes claims no related nontaxable expenses. Barnes calculates his claim as follows:

| Lawyer: | Years of Experience: | Rate: (2017/2018) | Hours Worked: | Total: |
|---|---|---|---|---|
| Sydney Janzen | 2 | $270 | 4.1 | $1,107.00 |
| Todd Logan | 3 | $270 | 13.0 | $3,510.00 |
| Alexander Tievsky | 3 | $350 | 13.5 | $4,725.00 |
| Eli Wade-Scott | 4 | $295/ $375 | 37.8/ 45.8 | $11,151.00/ $18,540.50 |
| Ryan D. Andrews | 13 | $610/ | 2.7/ | $1,647.00/ |

| | | $650 | 5.0 | $3,250.00 |
|---|---|---|---|---|
| Roger Perlstadt | 16 | $610/ $675 | 2.27/ 4.6 | $1,384.70/ $3,105.00 |
| | | **TOTAL:** | **128.77** | **$48,420.20** |

2.    The position of Defendant, ARYZTA LLC is that fees should be awarded on the following basis:

| Lawyer: | Years of Experience: | Rate: (2017/2018) | Hours Worked: | Total: |
|---|---|---|---|---|
| Sydney Janzen | 2 | $270 | 0 | $0.00 |
| Todd Logan | 3 | $270 | 6.5625 | $1,771.88 |
| Alexander Tievsky | 3 | $350 | 10.475 | $3,666.25 |
| Eli Wade-Scott | 4 | $295/ $375 | 20.85/ 10.225 | $6,150.75/ $3,834.88 |
| Ryan Andrews | 13 | $506.30/ $539.50 | 1.8/ 2.4 | $911.34/ $1,294.80 |
| Roger Perlstadt | 16 | $506.30/ $560.25 | 2.27/ 0.0 | $1,149.30/ $0.00 |
| | | **TOTAL:** | **54.5825** | **$18,778.70** |

3.    The specific disputes remaining between the parties are the following:

(a)    The appropriate hourly rates for Ryan Andrews and Roger Perlstadt;

(b)    Whether 37.8 hours spent by Eli Wade-Scott for research and preparation of the motion to remand, reply brief and initial supporting fee documentation should be fully compensated;

(c)    Whether Barnes' counsel should be compensated for internal strategy communications, and if so, whether such time should be fully compensated;

(d)    Whether certain time entries by Barnes' counsel were duplicative or cumulative;

(e)    Whether Barnes' counsel should be fully compensated for time spent in connection with Local Rule 54.3 and for all other time following the Court's award of fees on December 20, 2017.

4.    The motion for fees is based upon this Court's Memorandum Opinion and Order of December 20, 2017, remanding this matter to the Circuit Court of Cook County and awarding fees in favor of Plaintiff pursuant to 28 U.S.C. § 1447(c). The Court's remand of this matter to

state court will not be appealed as the deadline to challenge that Order on appeal has lapsed. The only remaining dispute in the litigation before this Court is the appropriate fee award, as all other proceedings are now pending before the Circuit Court of Cook County following the remand. ARYZTA has not yet determined whether it will pursue an appeal of this Court's award of fees under 28 U.S.C. § 1447(c) and reserves its right to do so as of this time.

5.      To avoid additional briefing on the issue of fees, the Parties' respective positions on the specific disputes are set forth below.

To the extent that ARYZTA has requested that the parties submit the Joint Statement without further briefing, ARYZTA has not had the benefit of seeing Plaintiff's response or arguments in support of the requested fees prior to submitting its position. Nonetheless, based upon the parties' exchange of information and communications to date, ARYZTA sets forth the following objections and maintains that the original requested fee amount of $18,799.70 should be reduced due to the inclusion of unnecessary and unreasonable fees stemming from the remand of this matter. ARYZTA contends that such fees should be reduced to at least $9,983.27. Additionally, ARYZTA believes that Plaintiff's counsel subsequently engaged in precisely the kind of over-zealous pursuit of fees that courts within this circuit have declined to award. As a result, ARYZTA requests that this Court further reduce the fees to be awarded to Plaintiff's counsel for work following the Court's Order of December 20, 2017 to at least $6,786.70 through February 21, 2018, and further reduce excessive fees incurred pursuant to Local Rule 54.3 to no more than $2,008.73, for a total fee award of no more than $18,778.70.

**(a)** **The appropriate hourly rates for Ryan Andrews and Roger Perlstadt.**

Reasonable hourly rates are determined from the market rate, or "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001) (quotation omitted). Plaintiff's counsel bears the burden of proving the market rate, and this burden can be met by producing affidavits from other attorneys of similar experience to establish the rates charged to paying clients for similar work or by relying on fee awards received in similar cases. *Id.* If Plaintiff's counsel meets this burden, Defendant then bears the burden of establishing the basis for awarding a lower rate. *Id.*

Here, Plaintiff's counsel asserts that Plaintiff should be compensated for the time spent by Ryan Andrews at $610.00 per hour for 2017 and at $650.00 per hour for 2018. Plaintiff's counsel further asserts that Plaintiff should be compensated for the time spent by Roger Pelstadt at $610.00 per hour for 2017 and $675.00 per hour for 2018.

ARYZTA objects to these rates in light of the contingency agreement between Plaintiff and Edelson PC in this matter, such that no money has been paid by Plaintiff to Edelson PC for its work on this matter to date. ARYZTA further disputes that Edelson PC would reach an agreement with a paying client for these rates for work on a similar case as such rates do not reflect the market rate for such services in Chicago, Illinois.

Rather, as acknowledged by Plaintiff's own expert, Professor William Rubenstein (*see* Declaration of Professor William B. Rubenstein, attached as Exhibit A), these rates trend at approximately 17% above the market rate. Despite Plaintiff's counsel's position that it is an elite class action litigation firm, 17% of Andrews' and Perlstadt's rate of $610.00 per hour represents a significant bump over the market rate at an extra $103.70 per hour for both attorneys in 2017 and an extra $110.50 per hour for Andrews and an extra $114.75 for Perlstadt in 2018. Defendant therefore requests that these fees be reduced by that 17% bump or to $506.30 per hour for 2017 for both Andrews and Perlstadt, and to $539.50 for Andrews and $560.25 for Perlstadt for 2018, particularly given that the motion to remand did not require counsel's class action expertise to justify the above-market rate.[1]

---

[1]Although only one factor to consider in the Seventh Circuit, the *Laffey* Matrix published by the United States Attorney's Office for the District of Columbia for 2015-2018, attached hereto as Exhibit B, reflects an average hourly rate of $483.00 per hour for attorneys of similar experience of 11-15 years and $536.00 per hour for attorneys of similar experience of 16-20 years for 2017-2018. As a result, even with the proposed deductions, the rates for Ryan Andrews and Roger Perlstadt are still believed to be over or at the high end of the average market rates for similarly experienced attorneys in Chicago. *See e.g. Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F.Supp.3d 723 (N.D.Ill. 2015) (collecting cases and noting that "the Matrix rates are significantly higher than those charged in this District").

Although Plaintiff's counsel asserts that its hourly rates have been approved as reasonable, the cases cited by Plaintiff's counsel in this District do not support that assertion. First, there were no objections to the fees sought or corresponding Local Rule 54.3 submissions in *Mocek v. Allsaints USA Ltd.*, 16 CV 8484, and instead, Judge Bucklo summarily approved the amounts requested in ruling on the motion to remand without engaging in any analysis of the reasonableness of Plaintiff's counsel's fees. Similarly, the cases of *Goodman v. Hangtime, Inc.*, 14 CV 1022, and *Haught v. Motorola Mobility, Inc.*, 12 CV 2515, do not appear to have involved any challenge or opposition to the fees requested by Plaintiff's counsel, and there is no explicit determination of the reasonableness of Plaintiff's counsel's fees in any of these cases.[2] Although, Judge Feinerman did award Plaintiffs' counsel's requested rates in *Wojcik v. Crown Castle USA, Inc.*, 15 CV 2612, there is no discussion of his decision to do so within his order. It appears from the record that Crown Castle's counsel sought a reduction of $170.00 per hour for Ryan Andrews yet charged its client rates in excess of that rate, and Plaintiff's counsel provided documentation that it had charged its own clients similar rates when defending similar cases. However, no such documentation has been produced to Defendant's counsel in the instant case and the cases relied upon by Plaintiff's counsel within its Local Rule 54.3 production are inapposite and unpersuasive. Therefore, Defendant maintains that the proposed 17% reduction in light of Plaintiff's own expert's concession that Plaintiff's counsel's rates are above the market rate is appropriate.

    (b)     **Whether 26.2 hours spent by Eli Wade-Scott for preparation of the motion to remand and whether 11.2 hours spent by Eli Wade-Scott for preparation of the reply in further support of the motion to remand was excessive,**

---

[2]Plaintiff's counsel further cites to other decisions in California and Massachusetts. However, in *Ellison v. Steven Madden, Inc.*, 11 CV 5935 (C.D. Cal.), there is likewise no indication that the requested fees were challenged and the reasonableness of Plaintiff's counsel's fees appears to have been supported only by counsel's self-serving affidavit.

**particularly in light of Barnes' reliance on the decision in *Mocek v. Allsaints USA Ltd.*, 220 F.Supp.3d 910 (N.D.Ill. 2016).**

Defendant largely opposes the fees sought by Plaintiff's counsel in light of their excessive nature given Plaintiff's counsel's work in *Mocek*, and the focus of their argument in requesting that this Court adopt the analysis and decision of Judge Bucklo in granting their motion to remand in that matter. *See* 220 F. Supp. 3d 910 (N.D.Ill. 2016). This focus was evident as early as November 13, 2017, when Todd Logan indicated that Plaintiff's counsel had "(successfully) gone through this exercise before, *see Mocek*, 220 F. Supp. 3d at 915." (*See* Email of November 3, 2017, attached as Exhibit C). In light of Plaintiff's counsel's familiarity with and work on *Mocek*, and the similarity between the briefs filed by Plaintiff's counsel in that proceeding and the instant case, it seems unnecessary and unreasonable for Plaintiff's counsel to have spent 59.87 hours, for a total of $18,799.70, to analyze, prepare and brief their motion to remand. (*See Mocek* briefs, attached as Group Exhibit D). Rather, these briefs and much of the arguments and case law cited therein are similar, and Plaintiff's counsel had the additional benefit of relying on Judge Bucklo's opinion in *Mocek* instead of starting from scratch. Yet, Plaintiff's counsel spent almost as much time as it spent in *Mocek* on its initial motion. (*See* Ex. D at Exhibit 1-B).[3]

Moreover, given the final work product, consisting of a brief of 12 pages, with only 9 of those 12 pages containing substantive writing, 27.4 hours expended to prepare this motion is excessive. Of those 27.4 hours, 26.2 hours were attributed to the work of Eli Wade-Scott alone. Additionally, it appears evident from Plaintiff's counsel's billing entries that the motion was substantively complete as of November 17, 2017, yet Plaintiff's counsel discussed billing for the motion on November 20, 2017, then engaged in a series of internal discussion and additional

---

[3]The discrepancy in the fee amount claimed in *Mocek* for the preparation of the motion to remand is attributed to the majority of the time being billed by Roger Perlstadt at $600 per hour.

revisions expanding the billing on the motion from a reasonable figure of 10.40 hours to 26.20 hours over the course of three days.

Similarly, Plaintiff's counsel billed a collective total of 14.97 hours for preparation of the reply to the motion to remand. However, the reply brief itself consists of only 7 pages, with only 6 of those pages containing substantive writing. Again, in light of the final work product and the serial revisions to the reply, and the similarity between the reply brief in the instant proceeding and that in *Mocek*, this work seems excessive. By contrast, Defendant further highlights that its response brief of 7 pages, with 5 pages of substantive writing, generated 7.3 hours of billable time. Although Plaintiff ultimately proved successful, the disparity in the respective amounts billed by Plaintiff's counsel, who does not have a client to answer to in order to regulate its billable time and fees paid for the work performed, suggests that Plaintiff's counsel took advantage of the potential recovery if successful on its motion to remand rather than expending only reasonable and necessary time to prepare and brief the issues. Accordingly, Defendant requests that Plaintiff's counsel's time be reduced accordingly. (*See also* Itemized Objections, produced to the Court as Exhibit E without inclusion in this filing to preserve confidentiality).

(c)     **Whether Barnes' counsel should be compensated for internal strategy communications, and if so, whether such time should be fully compensated.**

Although some extent of strategy may have been necessary, internal discussion and communications are not typically paid by third-party clients and Barnes' counsel's need to strategize at length is unnecessary and unreasonable, or alternatively, should be minimal, given counsel's overall strategy to rely on *Mocek*, assert the same arguments and much of the same authority raised therein, and the office's intimate familiarity with that proceeding. Additionally, the involvement of 5 different attorneys at all stages of the proceedings generated overlap and

the need for otherwise unnecessary internal communications that could have been avoided and would not be deemed reasonable by a third-party client receiving bills for the amounts charged.

**(d)    Whether Barnes' counsel should be compensated for duplicative and cumulative time for multiple attorneys engaged in the same work.**

When awarding fees, courts look to the reasonableness of the time incurred, and time determined to be "excessive, redundant or otherwise unnecessary" should be excluded. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001). The district courts possess the further discretion to strike time entries where they are "vague or inadequately documented." *Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir. 2000). Overall, the district courts are vested with a "great deal of discretion" to adjust fee awards based upon a variety of factors. *Zagorski v. Midwest Billing Servs., Inc.,* 128 F.3d 1164, 1167 (7th Cir.1997).

Numerous billing entries submitted by Barnes' counsel reflect duplicative and cumulative time where multiple attorneys engaged in the same work. (*See* Exhibit E). As third-party clients would not compensate counsel for such fees, these fees should be stricken. For instance, Defendant objects to the preparation and appearance of multiple attorneys for a simple status on November 8, 2017 and at the presentment of Defendant's motion to reconsider on February 1, 2018.

Moreover, many entries within Barnes' counsel's records lack sufficient descriptions of the work performed and further lack any verifiable work product to allow ARYZTA to sufficiently assert objections to the fees sought. ARYZTA further requests that this Court strike fees where the billing entries contain insufficient descriptions of work performed and/or where the entries are not accompanied by any verifiable work product to allow Defendant to assert any further objections or otherwise determine whether such billing was reasonable and necessary.

*See Harper,* 223 F.3d at 605. Additional itemized objections are further detailed within Exhibit E.

    **(e)**    **Whether Barnes' counsel engaged in excessive billing following the fee award in over-zealous pursuit of additional yet unnecessary fees.**

Courts within this circuit typically limit fees for compliance with Local Rule 54.3 to approximately 10-15% of the fees awarded for litigating the underlying merits of the case. *See e.g. Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001) (reducing attorney's time in preparing fee petition to roughly 10% of the time spent litigating the action's merits); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 411 (7th Cir.1999) ("1.6 hours billed to the preparation for an award of attorney's fees was reasonable in light of the approximately 140 hours of time the attorneys spent litigating the merits of the case"); *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988) (finding that 15 minutes devoted to fee petition for every hour spent litigating the merits was "the tail wagging the dog, with a vengeance"); *Gibson v. City of Chicago*, 873 F.Supp.2d 975, 992 (N.D.Ill. 2012) (similarly finding reduction of fee award appropriate where "the prevailing party's attorney spent 15 minutes preparing the fee petition for every hour spent litigating the merits").

Since this Court granted Barnes' request for fees on December 20, 2017, Barnes' counsel has almost tripled the amount sought from ARYZTA from the original affidavit detailing $18,799.70 in attorneys' fees to the sum of $48,420.20. Because Barnes' counsel seems to be litigating their fee award "with greater energy and enthusiasm" than the underlying merits of the motion to remand, ARYZTA requests that this Court consider this discrepancy when determining the reasonableness of the fees requested. *See Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F.Supp.3d 723 (N.D.Ill. 2015) *quoting Ustrak v. Fairman,* 851 F.2d 983, 987-88 (7th Cir. 1988).

Rather than engaging in a line-by-line review of the $15,453.00 in fees requested by Plaintiff's counsel for its purported compliance with Local Rule 54.3, ARYZTA requests that this Court reduce the requested fees to a value in line with awards of fees on fees within this district. To that end, ARYZTA requests that this Court limit any fees for Local Rule 54.3 procedures and preparation of the fee petition to no more than approximately 10-15% of the fees awarded for the work on the underlying matter of the remand. In the interest of compromise, ARYZTA previously proposed a figure of $2,008.73 for additional fees pursuing fees for the work on the remand and subsequent appeal and motion to remand through April 5, 2018, and would agree to the adoption of that figure in lieu of considering the additional billing submitted by Plaintiff's counsel earlier on the date of this filing, totaling $9,518.00 through May 2, 2018. However, should this Court request that ARYZTA supplement this filing with additional itemized objections to allow this Court to consider an award of a greater proportion to the underlying fees on the merits, ARYZTA will submit such itemized objections upon request.

**(f)    Whether Defendant's billing records serve as a proper comparator to Plaintiff's time records.**

ARYZTA does not seek a reduction in Plaintiff's counsel's hourly rates based upon the rates that it pays its own counsel for its defense in this litigation. As a result, ARYZTA maintains that defense counsel's hourly rates have no bearing on the proposed reductions ARYZTA seeks for the hourly rates of Ryan Andrews and Roger Perlstadt. Rather, as set forth above, ARYZTA believes that a 17% reduction in the rates for Ryan Andrews and Roger Perlstadt is appropriate in light of the opinions of Plaintiff's counsel's own expert, who attested that such rates were approximately 17% above the market rates in Chicago, Illinois.

To the extent that Plaintiff contends that the numbers of hours expended litigating the fee award are consistent with the hours spent by defense counsel, ARYZTA further challenges this

basis for comparison. As the party against whom the fee award was entered, ARYZTA was charged with determining whether to appeal or otherwise challenge this award, and once it determined to do so, defense counsel expended a number of hours preparing for the appeal and preparing the motion to reconsider. By contrast, any hours required to be expended by Plaintiff's counsel in connection with the appeal while in its earliest stages were minimal at best. Additionally, Plaintiff's counsel only began drafting a response in opposition to the motion to reconsider – the preparation of which should have required only minimal time as the party arguing that this Court's ruling was correct for the reasons already asserted by Plaintiff's counsel in connection with the underlying motion to remand.

With respect to the Local Rule 54.3 process and the parties' respective billing entries, ARYZTA further contends that defense counsel's work in challenging the fees requested should understandably be greater than the work expended by Plaintiff's counsel in maintaining its position, without much movement at all, on the total amount of fees to be awarded. Specifically, ARYZTA's counsel spent a number of hours preparing itemized objections to each of Plaintiff's counsel's billing entries and creating its own calculations for the fees to be awarded in light of those objections. ARYZTA's counsel further redacted and produced its own billing entries to Plaintiff's counsel, which arguably entailed greater redactions in light of additional and more regular client and insurance carrier communications. Despite producing the itemized objections to Plaintiff's counsel, Plaintiff's counsel did not reply in a line-item fashion and has not provided ARYZTA's counsel with a response to the proposed resolution of the fees aside from making a demand for $30,000 as of April 5, 3018, and subsequently communicating that Plaintiff's counsel would not be willing to consider any offer significantly lower than that amount.

In light of the various additional endeavors on which defense counsel expended time and incurred additional hours that do not track the work performed by Plaintiff's counsel, ARYZTA requests that this Court limit any comparative analysis of the parties' respective billing entries in determining the appropriate fees to be awarded to Plaintiff.

**Barnes's Position**

"The first rule of holes, according to an old saying, is to stop digging." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 702 (7th Cir. 2014). Defendant Aryzta LLC could have easily stayed out of the hole that it is in now. Immediately after Aryzta removed this case—originally filed in the Circuit Court of Cook County—it attacked the subject matter jurisdiction of this Court by filing a 12(b)(1) motion to dismiss. Plaintiff's counsel, Edelson PC, tried to warn Aryzta that its actions were inconsistent with its obligation to establish jurisdiction as the removing party, and offered a costless remand to state court. Aryzta didn't respond.

What followed was half a year of digging: Aryzta litigated and lost the motion to remand, filed and withdrew an appeal, and filed and withdrew a motion to reconsider. All the while Edelson repeatedly requested that Aryzta pay the fees then incurred. Aryzta has rebuffed those attempts, and in dragging Plaintiff Jamel Barnes and this Court through additional process has managed to bill more than twice as many hours. Continuing to dig, Aryzta now attacks Edelson's rates and hours for the unnecessary detour to federal court that it engineered. Edelson should be awarded its rates and hours in full, in the amount of $48,420.20, supported by the attached records. (*See* Declaration of Benjamin H. Richman, attached hereto as Exhibit F.)

## I.    PROCEDURAL HISTORY

Back in October 2017, Aryzta removed this case, a class action under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, to this Court. Despite clear authority dictating that it is a removing defendant's burden to establish the Court's jurisdiction after removal, *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 758 (7th Cir. 2009), Aryzta filed a motion to dismiss this case under Federal Rule 12(b)(1), arguing that Plaintiff lacked Article III standing.

Edelson e-mailed Aryzta's counsel to advise that this exact action—consistent with longstanding federal precedent—had resulted in a remand, with fees, in *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910 (N.D. Ill. 2016) (E-mail from Todd Logan to Kristen Cemate, attached hereto as Exhibit C). Plaintiff's counsel did not want to repeat that process, and offered an agreed remand, without fees, to state court. *Id.* Aryzta's counsel didn't respond to the e-mail.

Instead, Aryzta withdrew its 12(b)(1) motion to dismiss, believing it solved the jurisdictional problem. (Dkt. 22.) It didn't, and Edelson again contacted Aryzta's counsel and attempted to explain that the withdrawal would have no effect on Aryzta's burden as the removing party. (E-mail from Todd Logan to Kristen Cemate, attached hereto as Exhibit G.) Aryzta disagreed without basis, and forced Plaintiff to file a motion for remand. The Court granted the motion to remand and awarded fees pursuant to 28 U.S.C. § 1447. (Dkt. 39 (December 20, 2017).)

Up to that point, Barnes had incurred a modest $18,799.70 in fees. Edelson requested payment of the fees incurred. Rather than pay that amount, Aryzta has engaged in five months of litigation that has resulted in a significant increase to those costs:

- Instead of paying Barnes's fees incurred up to the point of the Court's December 20, 2017 order, Aryzta appealed the case to the Seventh Circuit. (Dkt. 42.) Aryzta withdrew the appeal, however, after the Seventh Circuit issued a jurisdictional query about the finality of the judgment.

- Aryzta then moved to reconsider the Court's award (while their appeal was pending and the court lacked jurisdiction). (Dkt. 49.) At presentment of this motion, the Court set a briefing schedule but warned Aryzta that briefing the motion to reconsider would constitute "fees on fees, which is a bad situation for the person paying." (Feb. 2, 2018 Hr'g Tr. at 6:23–25.)

- Two weeks into Barnes's briefing his response to Aryzta's motion to reconsider, Aryzta withdrew that motion, too. (Dkt. 56.)

- The Court then directed the parties to complete the Local Rule 54.3 process. (Dkt. 58.) Barnes timely tendered his fee records and support for this request. Edelson requested and Aryzta refused to pay those fees too, then amounting to $32,967.20.

- Aryzta tendered its responsive records under the Local Rule, contending that Edelson's fees should be cut in half. Barnes offered to settle for $30,000.00, less than the outstanding fees already requested and which excluded all of the time Edelson had spent preparing the Local Rule 54.3 production and this fee petition.

- Aryzta did not respond to that offer, and refused to make a counter-offer.

As the Court warned would happen, Plaintiff's fees have continued to increase throughout this process. Barnes now seeks compensation for Edelson's time in the amount of $48,420.20. Aryzta believes that $18,778.70 should be paid, $21 less than it owed (and could have walked away for) five months ago. The Court should award Barnes's fees in full given the substantial time Aryzta's counsel has needlessly caused his counsel—and the Court—to spend as a result of the improper removal and the months of litigation that followed.

## II. LEGAL STANDARD

Courts calculate fee awards beginning with the lodestar amount, which involves multiplying hours reasonably expended on the litigation by the hourly rate reasonably charged by the attorneys who spent them. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).[1] An attorney can establish that an hourly rate is reasonable through previous court approvals, approvals of rates for comparable attorneys (including within the same practice), and the hourly rate the attorney commands when charged to hourly-paying clients. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311–12 (7th Cir. 1996). Once an

---

[1]    Aryzta cryptically remarks that "no money has been paid by Plaintiff" and accordingly the rates are inappropriate. This may be a reference—without citation— to the Seventh Circuit's holding that, for remands secured by government-employed attorneys, a market-rate fee analysis is inappropriate. *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363 (7th Cir. 2000). Aryzta has never argued that a market-rate analysis is appropriate for Plaintiff, either in its motion to reconsider or Local Rule 54.3 submissions to Plaintiff, and this undeveloped argument is waived. Nor does *Hotline Industries* stand for the proposition that a plaintiff represented on a contingency basis should not be awarded fees on a market-rate analysis. *See Lawrence ex rel. Estate of Lawrence v. Biotronik, Inc.*, No. 04 C 1876, 2005 WL 2338812, at *2 (N.D. Ill. Sept. 20, 2005); *Keesling v. Richman*, No. 1:02-CV-1392-DFH, 2003 WL 1921812, at *2 n.2 (S.D. Ind. Apr. 18, 2003).

attorney has established an hourly rate, the burden shifts to the defendant to prove that it is not reasonable; that is, to produce "a good reason why a lower rate is essential." *Id.* at 1313 (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)). The lodestar yields the "presumptively reasonable" fee. *Montanez*, 755 F.3d at 553.

## III. ARGUMENT

Aryzta has only itself to blame for the hole it is in. It removed this case without basis, ignored offers to remand without cost, and rejected repeated offers by Edelson to resolve the matter of its fees. Having forced Barnes to incur substantial fees, Aryzta now has objected to nearly *every* time entry of his counsel as excessive or duplicative of other work. (*See* Def.'s Objections, attached hereto as Exhibit E.) Those dozens of objections are incredible, given that Aryzta's counsel spent *more* time litigating (and losing) these same issues. More than twice as much.

Through Aryzta's withdrawal of its last motion on the substantive issues in the case, Edelson sought compensation for 92.87 hours of time while Aryzta's attorneys, on the same issues, spent more than 200 hours. (*See* Def.'s Billing Records, attached hereto as Exhibit H, at 1–8 (to be filed under seal).) On the Local Rule 54.3 fee process—for which Aryzta argues that Barnes' hours should be reduced by 85%—Aryzta's counsel spent almost exactly as much time. (*See* Def.'s Billing Records, Ex. H at 9–10.) While Barnes dives into Aryzta's sandstorm of objections below, the Court need not. Aryzta's position is facially spurious and can be safely rejected. That Barnes's counsel secured an unmitigated victory in quite literally half the time speaks for itself.

So too for the hourly rates. Aryzta goes after the rates of two partners at Edelson whose 2018 rates are $675 per hour and $650 per hour. Both Ryan D. Andrews and Roger Perlstadt have particularly deep experience in issues of federal court jurisdiction and Article III standing,

having briefed and/or argued a half-dozen federal appeals on those questions, including *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016). Partners with the experience of Mr. Perlstadt and Mr. Andrews at major defense firms—who, like these partners, focus their practice on federal appeals and have an excellent track record on these issues—command substantially higher rates. It is against those firms that Edelson regularly litigates, and wins, cases. (*See* Edelson PC's Firm Resume, Exhibit I.)

And if there were any doubt about the appropriateness of those rates, it should be dispelled by the numerous courts that have approved them, the fact that Edelson PC's hourly-paying clients pay these rates, and an analysis of fee awards within this district by Professor William Rubinstein[2] that analyzed every recent opinion in the Northern District approving fees in class action litigation. Professor Rubinstein found that although Edelson partners rates are 17% higher than average, they are nonetheless reasonable given above average work product and results typically obtained. Indeed, Edelson strives to perform unparalleled work, and believes its track record, and its partners' expertise, supports a slightly higher than average rate for Mr. Andrews and Mr. Perlstadt.

A. **Edelson's hours expended on this litigation are reasonable and are half what Aryzta spent on the same issues.**

It's well-established that a fee respondent's own hours are a useful comparator. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999) ("Because [defendant] knew from the start that it would be required to foot its own legal bill, the amount it incurred cannot have been influenced by moral hazard. That [plaintiff] laid out less than

---

[2]     Professor Rubinstein is currently the sole author of Newberg on Class Actions, the leading national treatise on class action law. Newberg, with Professor Rubinstein as the author, is routinely relied upon by the Seventh Circuit as authority. *E.g., Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

[defendant] implies that it, too, engaged in prudent cost control and therefore is entitled to full indemnity."); *see also Gilfand v. Planey*, No. 07 C 2566, 2012 WL 5845530, at *17 (N.D. Ill. Nov. 19, 2012). That is why the Local Rule requires respondents to produce their own time. Local Rule 54.3(d)(5).

Edelson spent 59.87 hours litigating in this Court up to remand, 33.0 hours afterward responding to Aryzta's various half-attempts to undo the award, and 35.9 hours complying with the Local Rule 54.3 process, negotiating with opposing counsel, and drafting this memorandum. (*See* Plaintiff's Hours, Ex. F-1 to Richman Decl. (to be filed under seal).) Despite the fact that Aryzta's counsel spent more twice as much time on the substantive phases alone, and exactly the same amount of time on the fee petition, Aryzta contends that Edelson's time should be reduced by more than half. Aryzta raises line-by-line objections to Edelson's fees, but that specificity is a charade—they believe that nearly every entry should be paid at 50%. The reasoning behind Aryzta's meat-cleaver approach to Plaintiff's hours boils down to the following: (1) they think Edelson spent too much time drafting the motion to remand and reply in support, (2) they think internal conferences should never be compensated, and (3) they think the involvement of more than one attorney on any task is never appropriate. Every one of these objections is contradicted by standard litigation practice and Aryzta's own hours billing for the same things.

1. **The time that Edelson spent drafting a motion to remand and reply on the question of post-removal federal jurisdiction was appropriate.**

Aryzta's primary argument is that Edelson spent too much time drafting the motion to remand briefs. Aryzta contends that Edelson's time on research and drafting is disproportionate to its attorneys' time, who spent just 7.3 hours on their response brief. As Aryzta recognizes, the result is one reason to distinguish those investments of time. Another is that, after the Court ruled, Aryzta's counsel engaged in a flurry of research into the issues on remand: several attorneys—a

partner, senior counsel, and one associate—dedicated 21.7 hours to *post hoc* research into removal and Article III standing. (*See* Def.'s Research Hours, attached hereto as Exhibit J, at 1 (to be filed under seal).) Had that research been done before drafting the response to the motion,[3] Aryzta's hours on this question are only slightly less than the time spent by Plaintiff's counsel who wrote two briefs in that time. (Having done thoroughly done the research when Edelson also flagged the likely outcome when Aryzta removed in the first instance may well have obviated the need for briefing at all.)

Aryzta also leans heavily on the fact that Edelson handled *Mocek v. Allsaints*, and argues that the firm should simply have duplicated the motion that was successful there. It's entirely possible that the attorney who did the briefing in *Mocek,* Mr. Perlstadt—a partner with significant experience briefing issues of Article III standing and federal jurisdiction—could have completed this motion practice in half the time. But it would have cost twice as much, and would no doubt have drawn an objection.[4] Instead, the task was primarily given to an associate who used the *Mocek* briefing as a guide. But this case, of course, presented new drafting issues, such as how to present the *Mocek* opinion and how to handle Aryzta's withdrawal of its Rule 12(b)(1) motion. Edelson standard practice—believed to be shared by most other firms against which Edelson regularly competes—is not to copy and paste briefs, especially ones that implicate potentially far-reaching jurisdictional questions. Nevertheless, Aryzta was lucky that this issue

---

[3] Aryzta's attorneys appear to have conducted just 2.8 hours of research before drafting their response. (*See* Def.'s Billing Records, Ex. H at 1.) Barnes notes that his attorneys did not bill for any research time after the Court issued its order, as they were familiar with these issues.

[4] Barnes's fees, even after several months of litigation, are still below what the Court awarded in *Mocek*, which was $58,112.50. 220 F. Supp. at 915.

was handled by a firm who had been through this process before; a firm entirely inexperienced with briefing these questions would likely have taken longer and required more partner time.

Aryzta raises a further complaint that Edelson continued to edit the brief after finishing the first draft. This objection is confusing. Edelson readily admits that its attorneys complete extensive revisions of every substantive brief that they write. They are not alone in their hope that this is common—and expected—in legal practice. *See* Bryan H. Garner, *The Winning Brief* (2d ed. 2003) ("Poor writers are inclined to scorn revision and to assume incorrectly that good writers do not need to revise.") (quoting H.J. Tichy, *Effective Writing for Engineers, Managers, and Scientists* 10 (1966)).

### 2. Aryzta's complaints about internal conferences and the efforts of more than one attorney are contradicted by its own records and regardless, are without merit.

Internal conferences are part of any litigation practice, yet Aryzta believes Edelson should not be compensated for them. Ironically, Aryzta's counsel billed for 16.4 hours of internal conferences and internal memoranda over the course of the litigation. (*See* Def.'s Conference and Memoranda Hours, attached hereto as Exhibit J, at 2 (to be filed under seal).) In fact, Edelson actually billed for fewer such conferences and memoranda at 12.9 hours. Aryzta's contention that Edelson's internal communications should go uncompensated—as they are not typically paid by "third-party clients"[5]—is without any apparent basis.

Aryzta also raises the generic objection that too many attorneys worked on this case. It seems that Aryzta has the very same number of attorneys on its roster: Kristen Cemate

---

[5]     Aryzta repeatedly refers to what time might be compensated by a "third party client," but it's difficult to understand who that refers to. If Aryzta is referring to a *client*, that is, a party to a case in litigation, then Barnes substantively disagrees. If Aryzta is referring to a third-party insurance payor, that is irrelevant. Aryzta's counsel's receipt of depressed rates and hours as part of an agreement with a third party payor has nothing to do with whether Barnes should be compensated for these fees.

(associate), Jamie Filipovic (partner), Elizabeth Bertolucci (senior counsel), and Kevin O'Hagan (partner). Barnes's case is in fact more leanly staffed, with the involvement of only two partners who have performed just 15% of the billed time. Mr. Wade-Scott and Mr. Tievsky, both associates, have performed all of the legal research and drafting in the matter. Aryzta mistakes the involvement of two other attorneys at the case's initiation for their consistent involvement: two other associates helped devise the initial strategy and were present at the initial status in the case, but have not performed work on it since November 8, 2017. Defendant's *per se* objection to the number of attorneys on the case is thus unfounded.

Aryzta identifies very few time entries that it argues are actually duplicative, and none of them actually are:

- Two attorneys' review of the motion to dismiss—the basis of a significant strategic decision by Barnes to move for remand and fees, which triggered this six-month battle—is reasonable. For comparison, Plaintiff's motion to remand was reviewed by two partners, Kevin O'Hagan and Jamie Filipovic, and an associate, Kristen Cemate. When Plaintiff filed his reply brief, all three attorneys again reviewed it, dedicating 4.7 hours to the effort.

- Aryzta often asserts that a time entry that looks similar, such as "researching impact of amended MTD on remand and fee issues," and "initial research of fee issues" by Todd Logan, is in fact the same task being performed twice. Plaintiff is not sure why Aryzta has reached this conclusion, when the reasonable explanation is that the attorney was completing a task he started earlier.

- Aryzta argues that certain tasks are "not solely related to remand," such as Ms. Janzen's preparation for a status conference, and are not compensable. That mistakes the statute. All fees incurred "as a result of" the improper removal are compensable. 28 U.S.C. § 1447. A status—in federal court—is the result of removal.

- Plaintiff had two attorneys attend two court appearances: first, the initial appearance at which Plaintiff presented his intention to remand the action on the basis of Defendant's motion, and second, the hearing on Defendant's withdrawal of the motion to reconsider. Plaintiff's counsel assessed that both appearances presented significant strategic turning points in the case and would benefit from the presence of two attorneys. All other appearances in the case have been handled by a single associate.

It must be noted, yet again, that Aryzta's counsel's own practices betray much more "duplicative" time and partner involvement. All of the Edelson partners' involvement (again, just 15% of time billed) was essential supervisory practice. In contrast, partners at O'Hagan Meyer—or senior counsel who bill at partner rates—performed 37% of the work, including basic tasks like legal research, much of which is "duplicative" on Aryzta's analysis. (*E.g.* Def.'s Research Hours, Ex. J.)

Barnes cannot in good faith justify the time and fees that it would take to respond to each of Aryzta's line-by-line objections, which essentially amount to complaining that any work product that took more than a few minutes was excessive, and any task that involved more than one attorney was duplicative. The fact remains that Aryzta's counsel billed *twice* the amount of time to the case that Edelson did. Edelson's efficiency in achieving victory here speaks for itself.

3. **Aryzta spent the same amount of time complying with Local Rule 54.3 and preparing its fee motion as Barnes did; that time should be compensated in full.**

Aryzta argues that Barnes' fees for complying with Local Rule 54.3 and preparing this memorandum should be reduced to $2,008.73. Aryzta points generally to cases in which the Seventh Circuit approved rate cuts for fee petitions where the filer appeared to have inflated the time spent preparing it. *See Batt. v. Micro Warehouse, Inc.*, 241 F.3d 891, 894–95 (7th Cir. 2001); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill. 2012) (reducing 73 hours spent on fee petition). Again, there is no concern of hours inflation here, where Aryzta's hours make clear exactly how long this takes: Aryzta's counsel billed 30.7 hours in preparing their Local Rule response and memorandum, and Edelson spent 35.9. Aryzta argues that its hours should be greater, because it produced line-by-line objections to Barnes' entries and had to redact time. Edelson, of course, had to redact its time as well, and had to conduct a detailed

review of Aryzta's hours to expose its arguments detailed here. These activities are substantially the same, and Aryzta's attempt to distinguish them demonstrates that it knows that.

Here, the empirical evidence belies Aryzta's claim that Edelson maliciously overbilled for the Local Rule 54.3 process, and it was Aryzta that specifically requested that the Parties go through it. If Aryzta succeeds in reducing Barnes' hours to a fraction of the time that *both counsel* spent, it will have completely evaded the purpose of 28 U.S.C. § 1447(c) to compensate counsel for time-wasting removals.

### B. Edelson's rates are reasonable.

Aryzta has not objected to the rates of the associates at Edelson. Instead, Aryzta limits its objection to the rates of Mr. Perlstadt ($675 per hour in 2018 and $610 per hour in 2017) and Mr. Andrews ($650 per hour in 2018 and $610 per hour in 2017), relying on Edelson's own expert report from another case. *Aranda v. Carribean Cruise Line, Inc.*, No. 12-cv-04069 (Kennelly, J.), dkt. 533-4, attached hereto as Exhibit A. In that report, Professor Rubenstein analyzed rate approvals in class action litigation by courts in the Northern District of Illinois, and, from 343 individual hourly rates, determined that Edelson's rates were approximately 17% higher than the average plaintiff's class action firm. *Id.* ¶ 40 (finding that Edelson's experience and record of success justified those rates).

Aryzta advocates that Edelson partners deserve average rates, and for that reason, should be reduced by 17% in both 2017 and 2018.[6] Aryzta provides no particular reason that Mr. Perlstadt and Mr. Andrews should command an exactly average rate, contending only that "the motion to remand did not require counsel's class action expertise to justify the above-market

---

[6] Aryzta also refers, in a footnote, to the Laffey Matrix. Courts have been skeptical of the Laffey Matrix, and the Seventh Circuit has suggested that affidavits, surveys and fee awards are a more reliable source. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 650 (7th Cir. 2011).

rate." It's difficult to make sense of Aryzta's contention that these partners' class action expertise does not extend to federal court jurisdiction over class actions. For one, Aryzta's notice of removal, and response to Barnes's motion to remand, were premised on the Class Action Fairness Act ("CAFA"), a statute that solely addresses the intersection of federal jurisdiction and class actions. (*See* Dkt. 1; dkt. 31.) But to more generally correct Aryzta's apparent misunderstanding about what class action expertise includes—particularly for Edelson—below are recent cases concerning federal court jurisdiction which Mr. Andrews and Mr. Perlstadt have argued and/or briefed:

- *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (*Spokeo II*)

- *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) (*Spokeo III*) (holding that plaintiff had Article III standing to pursue FCRA claims)

- *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017) (citing amicus for Ryan Perry favorably on Article III standing)

- *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339–41 (11th Cir. 2017) (holding that plaintiff had Article III standing to pursue claims under Video Privacy Protection Act ("VPPA"))

- *Coulter-Owens v. Time, Inc.*, 695 Fed. App'x 117, 120–21 (6th Cir. 2017) (holding plaintiff had Article III standing to pursue claims under Michigan's Preservation of Personal Privacy Act)

- *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–84 (9th Cir. 2017) (holding that plaintiff had Article III standing under VPPA)

- *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908–910 (8th Cir. 2016) (holding that Plaintiff had Article III standing for various claims due to overpayment injury)

- *Rodriguez v. Sony Computer Ent'mt Am.*, 801 F.3d 1045, 1053 n.5 (9th Cir. 2015) (holding that plaintiff had standing to pursue claims under VPPA)

The jurisdiction of federal courts, particularly for the last several years, has been an essential battleground in class action litigation and one in which Mr. Perlstadt and Mr. Andrews have essentially unparalleled experience.

This Court should approve Mr. Perlstadt and Mr. Andrews' rates as requested.[7] Mr.

Perlstadt's rates were approved in *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910 (N.D. Ill.

2016). Other courts have routinely approved Edelson's rates as reasonable in the context of class

action settlement approvals. Fed. R. Civ. P. 23(h) ("In a certified class action, the court may

award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

parties' agreement."). A sample of those decisions is as follows:

- *Goodman v. Hangtime, Inc.*, No. 14-cv-1022 (N.D. Ill. 2015), dkt. 126, ¶ 14 (Blakey, J.)

- *Kulesa v. PC Cleaner*, No. 12-cv-0725 (C.D. Cal. Aug. 26, 2014), dkt. 101, at 16–17 (explicit determination of reasonableness of lodestar, awarding enhanced lodestar)

- *Theis v. AVG Techs. CZ, SRO*, No. 12-cv-10920 (D. Mass. May 5, 2014), dkt. 116, at ¶ 9 (awarding lodestar)

- *Haught v. Motorola Mobility, Inc.*, No. 12-cv-2515 (N.D. Ill. Nov. 20, 2014), dkt. 86 (minute entry) (Kendall, J.)

- *Robles v. Lucky Brand Dungarees*, No. 10-cv-4846 (N.D. Cal. May 10, 2013), dkt. 105, ¶ 13 (approving rates as reasonable, awarding percentage of fund)

Edelson PC is also widely recognized as a leader in privacy-related class actions. *Aranda*, 2017

WL 818854, at *4 ("[C]lass counsel are experienced and respected members of the plaintiff's

class action bar."); *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. 2010)

(recognizing Edelson PC as "pioneers in the electronic privacy class action field"); *see also In re*

*Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 (N.D. Cal. Aug. 12, 2011) (noting Edelson PC's

"significant and particularly specialized expertise in electronic privacy litigation and class

actions"); *see also Harris v. comScore*, No. 11-cv-05807, dkt. 369 (N.D. Ill. 2014) (granting final

---

[7]     It should be noted, as well, that reducing these attorneys' rates results in savings to Aryzta of, at most, $1,595.62. (If Aryzta's hours reductions are accepted, the rate reduction would yield $570.42.) While not an insubstantial sum, Aryzta dedicated much of its response to this project. Plaintiff suspects that Aryzta recognizes the harm that attacking Edelson PC's rates could cause to the firm's practice—which frequently requires fee requests based on previously-approved rates—in an attempt to hold the firm hostage and secure an unjustified settlement.

approval to one of the largest consumer class actions ever brought under federal electronic privacy laws, in which Edelson PC served as sole lead counsel). The firm was pleased to have its work praised by then-Chief Judge Holderman as "consistent with the highest standards of the profession" and "a model of what the profession should be . . . ." *In re Kentucky Fried Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670 (N.D. Ill. Nov. 30, 2011), dkt. 127 at 17:4–15.

Finally, Edelson PC's rates are also paid by hourly-paying clients. "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). The firm represents clients in both litigation and non-litigation matters as explained in the attached declaration. (Richman Decl., Ex. F at ¶¶ 6–10.) Several of these clients pay the firm's hourly rates. (*Id.* at ¶¶ 6–7.) Others pay based on a blended arrangement that includes both contingent and hourly compensation, with the hourly component premised on the firm's rates. (*Id.* at ¶ 8.) This fact alone is sufficient to approve Plaintiff's counsel's rates as reasonable.

Aryzta has presented no reason to think that Edelson's partners perform exactly average work to justify an exactly average rate. Mr. Andrews and Mr. Perlstadt's records demonstrate otherwise. And it was Mr. Perlstadt who briefed and won *Mocek*, pointing out the essential hypocrisy of defendants like Aryzta who remove and then seek to have a plaintiff's case dismissed for lack of Article III standing. Edelson's partner rates should be approved in full, and Barnes's attorneys' fees should be awarded in the amount of $48,420.20.

Respectfully Submitted,

By: /s/ J. Eli Wade-Scott
      One of the attorneys for
      Plaintiff, Jamel Barnes

Benjamin H. Richman
Roger Perlstadt
J. Eli Wade Scott
Edelson P.C.
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
T: 312.589.6370
F: 312.589.6378
brichman@edelson.com
rperlstadt@edelson.com
ewadescott@edelson.com

David Fish
John C. Kunze
Kimberly A. Hilton
The Fish Law Firm
200 East 5th Ave., Suite 123
Naperville, Illinois 60563
T: 630.355.7590
F: 630.778.0400
dfish@fishlawfirm.com
kunze@fishlawfirm.com
khilton@fishlawfirm.com

By: /s/ Kevin M. O'Hagan
      One of the attorneys for
      Defendant, ARYZTA LLC

Kevin M. O'Hagan (ARDC No. 6211446)
Jamie L. Filipovic (ARDC No. 6278943)
Kristen A. Cemate (ARDC No. 6299262)
O'Hagan Meyer, LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
T: 312.422.6100
F: 312.422.6110
kohagan@ohaganmeyer.com
jfilipovic@ohaganmeyer.com
kcemate@ohaganmeyer.com

**CERTIFICATE OF SERVICE**

I, J. Eli Wade-Scott, an attorney, hereby certify that on May 2, 2018, I caused to be served the above and foregoing ***Joint Statement Pursuant to Local Rule 54.3(e)*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system. All exhibits that are to be filed under seal were sent via e-mail to all counsel of record.

/s/ J. Eli Wade-Scott