UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMEL BARNES,<br><br>      Plaintiff,<br><br>  v.<br><br>ARYZTA, LLC,<br><br>      Defendant. | No. 17-cv-7358<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jamel Barnes brought this case on behalf of himself and a class of similarly situated individuals alleging that Defendant Aryzta, LLC violated the Illinois Biometric Information Privacy Act. Aryzta removed this case on October 12, 2017, but the Court remanded it on December 20, 2017 and awarded Barnes attorney's fees under 28 U.S.C. § 1447. Currently before the Court is Barnes' petition for attorney's fees. R. 64. For the following reasons, the Court awards Barnes' counsel $28,236.00 in fees.

**Background**

As detailed in the procedural history below, most of the fees sought in Barnes' petition were incurred after remand.

After Aryzta removed the case to this Court, it filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) on November 2, 2017. R. 16. Under Rule 12(b)(1), Aryzta argued that Barnes had not alleged a concrete injury in fact sufficient for Article III

standing. Barnes' counsel quickly e-mailed Aryzta's counsel to advise that a similar motion had resulted in a remand—with fees—in *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910 (N.D. Ill. 2016). Barnes' counsel offered an agreed remand without fees. R. 64-3.

Aryzta's counsel did not agree to the offer. Instead, on November 6, 2017, Aryzta moved to withdraw its motion to dismiss and sought leave to file an amended version raising only Rule 12(b)(6) arguments for dismissal. R. 22. The Court granted the motion to amend on November 8, 2017. R. 26.

But Aryzta's amendment did not solve its jurisdictional problem, and on November 22, 2017, Barnes filed a motion to remand the case to state court. R. 29. On December 20, 2017, drawing heavily on *Mocek*, the Court granted the motion to remand without deciding whether there was Article III standing because Aryzta, who bore the burden of proof on the matter, did not attempt to persuade the Court that federal jurisdiction existed:

> The Court declines to decide whether there is Article III standing because neither party is willing to address the issue. On the one hand, Plaintiff seeks remand to the state court and therefore does not want to argue to this Court it has sustained a concrete injury-in-fact because then it would be conceding subject matter jurisdiction in federal court. Defendant, on the other hand, would like to argue that Plaintiff has not sustained an Article III injury but has withdrawn any argument to that effect in a ploy to avoid being forced out of federal court. The difference between the two parties is that Plaintiff does not have to take a position on the standing issue while Defendant does, because Defendant bears the burden of establishing jurisdiction in this Court.

R. 39 at 8. The Court also explained that Aryzta's admission that the issue of Article III standing was unsettled with respect to the claims brought was an alternative

ground for remanding the case to state court. *Id*. at 9 ("That consideration alone supports remand, as any doubt regarding jurisdiction should be resolved in favor of the states. Indeed, as a general matter, federal courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.") (citing *Mocek*, 220 F. Supp. 3d at 912-13)). Finally, the Court awarded fees to Barnes, citing the reasoning in *Mocek*. *See Mocek,* 220 F. Supp. 3d at 914-15 ("In short, it should have been obvious to defendant, based on well-settled law, that with no party asking for the merits of plaintiff's claim to be decided in federal court, and both sides arguing against federal jurisdiction, the only possible outcome was for the case to end up right back where it started: in state court. Under these circumstances, I have no trouble concluding that defendant lacked an objectively reasonable basis for seeking removal."). At that point, Barnes claims it had incurred only $18,799.70 in fees. R. 64 at 15.

Instead of paying Barnes' fees, Aryzta appealed the case to the Seventh Circuit on January 19, 2018. R. 42. But because this Court had not quantified the amount of fees Aryzta was to pay, on January 25, 2018 the Seventh Circuit questioned its jurisdiction and ordered Aryzta to file an additional memorandum as to why the appeal should not be dismissed. R. 48-1. Aryzta dismissed the appeal on February 8, 2018. *See* R. 54.

While the appeal was pending, on January 29, 2018, Aryzta filed a motion before this Court, urging the Court to reconsider whether Aryzta had a reasonably objective basis for removal under the Class Action Fairness Act and accordingly

3

reconsider its award of fees. R. 49. Two weeks into the briefing schedule, on February 16, 2018, Aryzta withdrew its motion to reconsider "in light of the risk that further proceedings before this Court continue to increase the fee award if affirmed and Defendant's concerns that Plaintiff's counsel continues to engage in excessive and unnecessary work to inflate its claim for fees and costs." R. 56 at 2.

Unable to agree to a full resolution on Barnes' fees, the parties filed this Joint Statement Pursuant to Local Rule 54.3(e) on May 2, 2018.

**Analysis**

Courts calculate fee awards beginning with the lodestar amount, which involves multiplying hours reasonably expended on the litigation by the hourly rate reasonably charged by the attorneys who spent them. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). The lodestar yields the "presumptively reasonable" fee. *Id*.

Barnes' fee petition seeks $48,420.20 for 128.8 hours of work performed by six attorneys from Edelson, P.C. through the filing of this petition[1]:

| Lawyer | Years of Experience | Rate (2017/2018) | Hours Worked | Total |
|---|---|---|---|---|
| Sydney Janzen | 2 | $270 | 4.1 | $1,107.00 |
| Todd Logan | 3 | $270 | 13.0 | $3,510.00 |
| Alexander Tievsky | 3 | $350 | 13.5 | $4,725.00 |
| Eli Wade-Scott | 4 | $295/$375 | 37.8/45.8 | $11,151.00/ $18,540.50 |
| Ryan D. Andrews | 13 | $610/$650 | 2.7/5.0 | $1,647.00/ $3,250.00 |
| Roger Perlstadt | 16 | $610/$675 | 2.3/4.6 | $1,384.70/ $3,105.00 |

---

[1] The Court rounds to the nearest tenth of an hour, for the sake of simplicity, but uses Barnes' calculations. *See* R. 64 at 1-2.

4

| | | Total: | 128.8 | $48,420.20 |
|---|---|---|---|---|

Aryzta argues only $18,778.70 should be paid. The parties' disputes are relatively limited. First, Aryzta disputes the hourly rates of the two partners, Ryan D. Andrews and Roger Perlstadt. Second, Aryzta disputes several categories of time entries. The Court first addresses the reasonableness of the disputed hourly rates claimed and then the reasonableness of the disputed hours.

A. **Hourly Rates**

A reasonable hourly rate should reflect the market rate for the attorney's services. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir. 1999). "The burden of proving the 'market rate' is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Id*. at 554-55. The fee applicant can meet his initial burden "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases." *Id*. at 556.

Barnes asserts that a reasonable hourly rate for Ryan Andrews is $610.00 per hour for 2017 and $650.00 per hour for 2018 and that a reasonable hourly rate for Roger Perlstadt is $610.00 per hour for 2017 and $675.00 per hour for 2018. Barnes contends Edelson's rates are paid by hourly-paying clients, *see* R. 64-6 ¶¶ 7-10, which

by definition represents the attorney's market rate. *See People Who Care*, 90 F.3d at 131 ("The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate.").

Other evidence also supports these rates. Edelson's rates, including the rates of Messrs. Perlstadt and Andrews, have been approved by several courts in the context of class action settlement approvals. *See e.g., Goodman v. Hangtime, Inc.*, No. 14-cv-1022 (N.D. Ill. 2015), dkt. 126, ¶ 14 (approving Mr. Andrews' rate of $570 an hour in 2015); *Haught v. Motorola Mobility, Inc.*, No. 12-cv-2515 (N.D. Ill. Nov. 20, 2014), dkt. 86 (approving Mr. Perlstadt's rate of $515 an hour in 2014, *see* dkt. 79). When increasing for inflation and skill of the attorneys, these prior awards are evidence that the hourly rates are reasonable here. *See Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 647 (7th Cir. 2011) ("a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work"); *Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) ("hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney."). Aryzta argues that these rates are not representative of counsel's hourly rates because the parties in those cases did not object to counsel's fees. Aryzta cites no support for that argument and the Court sees no reason why an hourly rate approved by a court should have any less merit simply because it was agreed to by the parties.

Aryzta's primary argument against these rates relies on an expert report offered by Edelson in another case, *Aranda v. Carribean Cruise Line, Inc.*, No. 12-cv-

6

04069, dkt. 533-4. R. 64-1. In that report, the expert analyzed rate approvals in class action litigation by courts in the Northern District of Illinois, and, from 343 individual hourly rates, determined that Edelson's rates were approximately 17% higher than the average plaintiff's class action firm. *Id*. ¶ 40. Aryzta advocates that Edelson partners deserve only average rates, and for that reason, the rates here should be reduced by 17% in both 2017 and 2018. But in his report, the expert made clear that Edelson attorneys should *not* command an average rate. Instead, he noted that they should "be counted among the elite of the profession generally and this area of law specifically" because of their expertise in the area. *Id*. & n.3 (listing cases praising Edelson). Numerous courts have likewise commended Messrs. Perlstadt and Andrews for their expertise and skill in privacy litigation and in Article III issues, both of which were implicated and were important here. *See* R. 64 at 25 (citing to a number of cases in which Mr. Andrews or Mr. Perlstadt argued and/or briefed (and won) important privacy-related and case-in-controversy cases in circuits across the country). The issues in this case were relatively unique and addressed new Supreme Court caselaw on Article III standing, thus implicating and warranting counsel's expertise (and their higher hourly rate) in this area.

Counsel's rates are reasonable given the market rate that hourly clients are willing to pay, judicial approval of their rates, and their level of reputation and expertise in the area. Accordingly, the Court awards counsel their requested rates.

**B.     Hours Worked**

The hours worked component of the lodestar excludes hours "not reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours. *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553. The Court also may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.

Aryzta questions counsel's entries spent litigating the remand and its related briefings as excessive and duplicative. Aryzta also questions the amount of time Barnes spent preparing this fee petition. Out of the total 128.8 hours claimed by Barnes' counsel, 92.9 hours were spent litigating the merits, while 35.9 hours were spent litigating this fee petition. The Court will address each category in turn.

1. **Merits Petition**

**Motion to Remand**. Aryzta first argues that in light of counsel's familiarity with and work on *Mocek*, it was excessive for Edelson to have spent a total of 59.8 hours analyzing, preparing, and briefing the motion to remand. Aryzta also specifically challenges the 37.4 hours spent by associate Eli Wade-Scott as excessive.

The Court has reviewed both the briefs filed in *Mocek* and the briefs filed here and disagrees with Aryzta's contention that they are so similar that Barnes' counsel should have spent a minimal amount of time on the briefs. While Edelson did have the benefit of having filed and succeeded on *Mocek*, this case had additional

8

considerations due to Aryzta's withdrawal of the motion to dismiss. Regardless, it would have been improper for any firm to merely copy and paste a previous brief. The Court also disagrees with Aryzta's statement that the length of the briefs (12 pages for the initial brief and 7 pages for the reply) are not commensurate with the time spent on those briefs. In this Court's experience, long briefs on limited issues are ineffective, and much less effective than simple, straightforward briefs that succinctly address the pertinent issues.[2] The brevity of the briefs here is likely representative of the time Edelson put into refining the ultimately successful motion to remand.

However, the Court does agree with Aryzta that the amount of time spent on the briefs was excessive. First, it was unreasonable for associates Todd Logan and Sydney Janzen to have spent almost 4.5 hours reviewing Aryzta's motions to dismiss given that they spent no time drafting the motion to remand. While it appears Mr. Logan briefly researched issues related to the motion to dismiss and sent emails to Aryzta's counsel, the hours spent on those tasks sufficiently encompass any time he would have spent merely reading the motions. Ms. Janzen did even less—the extent of her time regarding the motion to dismiss was exchanging emails with Mr. Logan regarding reaching out to Aryzta's counsel. But Mr. Logan communicated with opposing counsel, so it is unclear why Ms. Janzen (a more junior attorney) needed to discuss with Mr. Logan the details of that email. The Court finds these hours inappropriate. Accordingly, Ms. Janzen's time is reduced by 1.4 hours (reflecting the

---

[2] Mark Twain once said, "I didn't have time to write a short letter, so I wrote a long one instead." Good editing takes time. A long, poorly edited brief is often a sign of a lack of effort and work to produce it.

9

time spent reviewing the motion and the time spent communicating with Mr. Logan), and Mr. Logan's time is reduced by 3.3 hours.

Second, the Court agrees that the time spent by Mr. Wade-Scott was excessive because although the issues here were different, he did have the benefit of the *Mocek* briefing. Accordingly, the Court cuts the time Mr. Wade-Scott spent on the briefing by 50%, for a total reduction of 18.7 hours. Finally, the Court cuts by 50% the hours partners Ryan Andrews and Roger Perlstadt spent editing the reply on the motion to remand. The partners spent over 2.5 hours reviewing the reply draft, which is excessive given that Mr. Perlstadt spent only 1.2 hours reviewing the initial brief (an amount the Court finds reasonable). Rather than choosing to reduce the hours of just one of the partners, the Court will reduce both by half because they have different hourly rates. Accordingly, Mr. Perlstadt's time will be reduced by .4 hours, and Mr. Andrews' time will be reduced by .9 hours. With these reductions, the total Edelson spent on the motion to remand and its reply equates to 35.3 hours, which the Court finds reasonable.

**Internal Communications.** Aryzta next argues that the 12.9 hours Edelson billed for internal discussions would not have been paid by a client, and thus should not be paid by Aryzta. Courts may award fees for inter-office communications so long as the time spent communicating is "reasonably expended." *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008). In fact, the Seventh Circuit has recognized that "[t]he practice of law often, indeed usually, involves significant periods of consultation among counsel." *Id*. This is because "[t]alking through a set of authorities or seeking

advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Id.* at 512. To ensure that the amount of time billed to internal communications was "reasonably expended," attorneys should "identify explicitly the subject matter of their discussions." *Id.*

After reviewing the billing records, the Court finds the amount of time spent by Barnes' counsel on internal discussions (a total of 13 hours over the course of almost four months) reasonable given the various stages this case has seen. That these conferences were generally brief—many were only 0.10 or 0.20 hours long—also suggests that the time counsel billed for these conferences was not excessive. More importantly, counsel's entries identify the particular legal task or stage of litigation actually discussed during these conferences, such as the motion to remand or strategy for responding to Aryzta. And, it is reasonable that the associates in this case (who did the vast majority of the substantive work) would have regularly discussed work assignments with Mr. Andrews and Mr. Perlstadt, the two main partners on the case. In short, these hours are reasonable.

**Duplicative Entries.** Aryzta also argues that the involvement of several different attorneys at all stages of the proceedings generated overlap such as unnecessary internal communications and duplicative work. The Court has reviewed Aryzta's line by line objections and does not find the challenged work unreasonable except for a few entries regarding the status hearings. First, on November 7 and 8, 2017, associates Sydney Janzen and Todd Logan billed over two hours together to prepare for the initial status hearing. Mr. Logan appeared by phone and led the

11

relatively short status hearing where the parties did little else but set a briefing schedule. Mr. Logan billed 1.8 hours for "prep for hearing; hearing" without specifying how much time was spent toward either task. Because he appeared by phone, the Court doubts he spent more than .2 hours for the "hearing" task. The Court will award Mr. Logan .5 hours to prepare for the hearing, but will reduce the remainder of the time. The Court also deducts all the time Ms. Janzen spent preparing for the hearing and attending the hearing, as it appears that her role was more of a junior observer rather than a meaningful participant. Clients do not typically pay for training time of more junior associates, and neither should Aryzta here. Barnes argues that because the initial status hearing was more important strategically, it was appropriate to have two attorneys present rather than one associate. That argument would be persuasive if a partner had appeared at the hearing, but having two of the most junior associates on the team appear for a short status makes little sense. Mr. Logan's time thus is reduced by 1.1 hours and Ms. Janzen's time is reduced by 2.5 hours.

The Court also finds the time billed for the hearing on February 1, 2018 excessive. Mr. Perlstadt spent 2.2 hours preparing for the hearing and 1.9 hours in court at the hearing. Mr. Wade-Scott spent 2.5 hours in total for the hearing, which included .6 hours preparing for the hearing, 1.4 hours traveling to and from court and appearing in court, and .5 hours debriefing with Mr. Andrews. Mr. Wade-Scott was the primary attorney during the hearing, and Mr. Perlstadt made only a couple of brief procedural comments. While the Court commends Edelson for allowing junior attorneys to lead and manage cases as Mr. Wade-Scott did here, it was excessive for

Mr. Perlstadt to have spent as much time as he did preparing for the hearing when Mr. Wade-Scott only needed .6 hours. This case moved relatively quickly, so it is unlikely Mr. Perlstadt needed that much time to refamiliarize himself with the case. Accordingly, the Court deducts 2.2 hours from Mr. Perlstadt's time as excessive and duplicative of Mr. Wade-Scott's work.

**Clerical Work**. Finally, the Court will deduct 1.3 hours for clerical work billed (such as reviewing the Court's standing order and deadlines, calling the court clerk, and preparing appearances). Accordingly, Ms. Janzen's time is reduced by .2 hours; Mr. Wade-Scott's time is reduced by .5 hours; and Mr. Tievsky's time is reduced by .6 hours.

The above results in a reduction of 31.7 hours for a total of 61.2 hours awarded for the time Edelson spent litigating the remand petition up to Aryzta's withdrawal of its motion to reconsider.

### 2. Fees on Fees

Finally, Aryzta contends Barnes' counsel expended excessive time litigating this fee petition. The Court agrees. After the reductions above, Edelson spent 61.2 hours litigating the remand and dealing with Aryzta's notice of appeal and motion to reconsider. Edelson seeks 35.9 hours (or 60% of the time spent on the merits) for the time it spent complying with the Local Rule 54.3 process, negotiating with opposing counsel, and drafting this memorandum.

The Seventh Circuit has held that, while the time spent preparing a fee petition is compensable, lawyers often "litigate fee issues with greater energy and

13

enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill. 2012). One factor to be considered in determining the reasonableness of time spent preparing a fee petition is "the comparison between hours spent on the merits and the hours spent on the fee petitions." *Gibson*, 873 F. Supp. 2d at 992. "Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition." *Id.* (*citing Spegon*, 175 F.3d at 554).

Courts in this circuit have found that the proper ratio of time spent on the merits to time spent on the fee petition is less than 25%. In *Ustrak*, for example, the Seventh Circuit reversed a fees-on-fees award for which "[f]or every hour spent litigating the merits the plaintiff's attorney's devoted almost 15 minutes to preparing a petition requesting fees for that hour." *Ustrak*, 851 F.2d at 987-88. The Seventh Circuit "disallow[ed] two-thirds of the lawyer and student hours allowed for the preparation of the fee petitions," explaining that "[t]he allowance [wa]s still a generous one." *Id.* at 988. *See also, Spegon*, 175 F.3d at 554 (affirming district court's reduction for "hours spent on the fee petitions" from 9.2 hours to 1.6 hours); *Gibson*, 873 F. Supp. 2d at 992 (10 minutes to prepare fee petition for every hour on the merits was excessive; reducing request by half); *Mays v. Springborn*, 2014 WL 12730575, at *7 (C.D. Ill. Nov. 6, 2014) (100:1 ratio of work on merits compared to fee preparation reasonable).

The Court agrees that 35.9 hours is disproportionate to the time spent on the merits of this case. *See Ozinga v. United States Dep't of Health & Human Servs.*, 2018 WL 2320933, at *8 (N.D. Ill. May 22, 2018) ("[I]t is hard to imagine that plaintiffs' counsel would ask a paying client to compensate counsel for 35.94 hours to figure out how much the client owes. And hours that are not properly billed to one's client also are not properly billed to one's adversary.") (citations omitted). Accordingly, the Court will reduce the requested hours spent litigating the fee petition by 60%. With this reduction, Mr. Andrews is awarded 1 hour; Mr. Tievsky is awarded .6 hours; and Mr. Wade-Scott is awarded 12.8 hours. These 14.4 hours generously amount to 23% of the hours spent litigating the merits.

\* \* \*

After all of the above reductions are taken into account, the Court awards the following:

| Lawyer | Years of Experience | Rate (2017/2018) | Hours Worked | Total |
|---|---|---|---|---|
| Sydney Janzen | 2 | $270 | 0 | $0 |
| Todd Logan | 3 | $270 | 8.6 | $2,322.00 |
| Alexander Tievsky | 3 | $350 | 12.1 | $4,235.00 |
| Eli Wade-Scott | 4 | $295/$375 | 18.6/26.6 | $5,487.00 $9,975.00 |
| Ryan D. Andrews | 13 | $610/$650 | 1.8/3.6 | $1,098.00/ $2,340.00 |
| Roger Perlstadt | 16 | $610/$675 | 1.9/2.4 | $1,159.00/ $1,620.00 |
| | | **Total:** | **75.6**[3] | **$28,236.00** |

---

[3] The Court finds these hours reasonable when compared to Aryzta's own hours, which are a useful comparator. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999) ("Because [defendant] knew from the start that

15

\* \* \*

One final note. On June 8, 2018, Aryzta filed a notice of supplemental authority and request for oral argument in opposition to Barnes' petition for fees. R. 69, 70. While Aryzta styles the notices as pertinent to this opinion, it is clear that Aryzta filed that notice and the cases attached to it in an effort to convince this Court to reconsider its opinion granting Barnes his request for attorney's fees under 28 U.S.C. § 1447. Aryzta had its opportunity to ask for reconsideration of that opinion, but it chose to withdraw its motion to avoid incurring additional fees. *See* R. 56. The Court will not revisit its decision now. Accordingly, Aryzta's request for oral argument on that issue (R. 70) is denied.

**Conclusion**

For the foregoing reasons, the Court awards Barnes' counsel a total of $28,236.00 in fees.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 22, 2019

---

it would be required to foot its own legal bill, the amount it incurred cannot have been influenced by moral hazard. That [plaintiff] laid out less than [defendant] implies that it, too, engaged in prudent cost control and therefore is entitled to full indemnity."). Aryzta billed 234.60 hours, almost three times what Barnes will be awarded. But, Aryzta presumably spent more time drafting the notice of appeal and motion to reconsider—although Barnes billed some time researching issues related to those later filings, he did not file written responses to either because Aryzta withdrew them shortly after filing the motions.

16